1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

| | |
|---|---|
| DAVID M. SHAW,<br><br>                               Plaintiff,<br><br>          v.<br><br>NANCY BERRYHILL, Acting Commissioner<br>of Social Security,<br><br>                               Defendant. | Case No. 2:17-cv-00486-JCC-TLF<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for <u>April 13, 2018</u> |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

David M. Shaw has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). This is the second judicial review in this case; the Honorable Mary Alice Theiler, United States Magistrate Judge, issued a Report and Recommendation and the Honorable Barbara J. Rothstein, United States District Court Judge, adopted that Report and Recommendation and ordered a remand of the case for additional proceedings. *Shaw v. Colvin,* 2014 WL 4449920 (W.D. Wash. 2014), and 2014 WL 4449923 (W.D. Wash. 2014), unpublished opinions in Case No. C13-2073-BJR, Dkt. 20, 21, 22. After remand, another administrative hearing was held, and the Administrative Law Judge determined that Mr. Shaw was not disabled. For the reasons set forth below, the undersigned recommends that the Court affirm the Social Security Administration's decision to deny benefits.

REPORT AND RECOMMENDATION - 1

## I. BACKGROUND

Mr. Shaw filed an application on May 23, 2005 for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 (d), alleging that his disability onset was April 29, 2005. Dkt. 17, Administrative Record (AR) 1249. That claim was denied initially and again on reconsideration. *Id.* In a decision on April 16, 2008, an administrative law judge (ALJ) found that Mr. Shaw was not disabled. *Id.*; AR 31.

Mr. Shaw appealed, and the Appeals Council granted his request for review. AR 49, 1249. While the review was pending, Mr. Shaw filed another application in February 2010 for Disability Insurance Benefits. AR 15, 52. On this 2010 application, the State agency found (at the initial level) that he was disabled with an onset date of April 17, 2008. AR 1259.

The Appeals Council, on July 2, 2010, granted review and remanded Mr. Shaw's case to an ALJ for re-adjudication. AR 19-23. In a decision on December 19, 2011, an ALJ reviewed both applications, reopened the State agency's favorable disability determination and found that Mr. Shaw had not been disabled between the earliest alleged onset date of April 29, 2005, and his date last insured,[1] December 31, 2010. AR 12, 1249.

---

[1] SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. The period of insurance coverage is determined by the amount of the claimant's earnings that were previously taxed. *See* 42 U.S.C. § 423(c)(1).The claimant must show that he or she is disabled and also contributed to the federal insurance trust fund (by way of deductions to his or her wages). 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A) (Title II). A claimant for SSDI must show that disability onset occurred by the date of last insured. 42 U.S.C. §§ 423(a)(1), (c)(2), (d)(1)(A). In contrast with SSDI's (Title II) employment-based insurance that is time-limited, SSI (Title XVI) benefits are need-based; to be eligible, a person must claim to be "aged, blind or disabled", must have income and resources below a certain threshold, but the benefit is not tied to previous employment earnings and is not limited to a certain period of insurance. 42 U.S.C. §§1381 *et seq.* (Title XVI).The legal criteria for deciding whether a disability exists is the same under both SSDI and Supplemental Security Income (SSI). *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017). Under both programs, "the onset date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months." *Wellington v. Berryhill*, 878 F.3d 867 (9th Cir. 2017).

REPORT AND RECOMMENDATION - 2

On appeal, this Court remanded that decision for the ALJ to reconsider whether Mr. Shaw's back condition met or medically equaled the criteria for Listing 1.04. AR 1249, 1263-75; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Although the Court reversed and remanded for further proceedings on the issue concerning Listing 1.04, this Court rejected the claimant's other contentions on appeal and affirmed the ALJ's adverse credibility determination and her analyses of medical opinions by Jens Chapman, M.D., and Marguerite McNeely, M.D. AR 1269-73. *Shaw v. Colvin,* 2014 WL 4449920 (W.D. Wash. 2014), and 2014 WL 4449923 (W.D. Wash. 2014), unpublished opinions in Case No. C13-2073-BJR, Dkt. 20, 21, 22.

Another administrative hearing was held on March 19, 2015, on the sole issue for which reversal and remand had been ordered: Whether the criteria for Listing 1.04 had been met in Mr. Shaw's situation. AR 1723-93. Mr. Shaw and a medical expert, Dr. Arthur Brovender, appeared and testified. *Id.* At step two, the ALJ determined that Mr. Shaw suffered from the following severe impairments: "lumbar disc syndrome, status-post laminectomy and discectomy fusion, and meralgia paresthetica." AR 1252. At step three, the ALJ determined that Mr. Shaw's condition did not meet or medically equal the criteria of section 1.04A. AR 1255.

The ALJ found that Mr. Shaw had the residual capacity to perform a range of light work, as defined under 20 CFR 404.1567(B). AR 1257. At step four of the five-step analysis, the ALJ decided that Mr. Shaw could perform his past work as an art framer as it is generally performed, and therefore that he was not disabled. AR 1249-61 (ALJ decision dated June 15, 2015). The Appeals Council denied Mr. Shaw's request for review on January 24, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1240. Mr. Shaw appealed that decision in a complaint filed with this Court on March 27, 2017. Dkt. 1; 20 C.F.R. § 404.981.

REPORT AND RECOMMENDATION - 3

In this appeal, the parties disagree about whether the ALJ erred in finding at step three of the five-step evaluation process that Mr. Shaw's impairments did not meet or medically equal the listed criteria for a spinal disorder, Listing 1.04. The parties also disagree about whether the ALJ erred in finding at step four that Mr. Shaw could perform the job of art framer as it is generally performed.

Mr. Shaw seeks reversal of the ALJ's decision and remand for an award of benefits or, alternatively, for further administrative proceedings, arguing that the ALJ misapplied the law and lacked substantial evidence for his decision.

For the reasons set forth below, the undersigned concludes that the ALJ properly applied the law at steps three and four of the disability analysis and substantial evidence supports her findings that Mr. Shaw's condition did not meet or medically equal Listing 1.04 and Mr. Shaw could perform his past work as an art framer. The undersigned recommends that the ALJ's decision to deny benefits be affirmed.

## II.  STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done

REPORT AND RECOMMENDATION - 4

in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

REPORT AND RECOMMENDATION - 5

1

2          III.  THE ALJ'S FINDINGS AT STEP THREE

3          At step three of the five-step sequential process, the ALJ considered Listing 1.04

4   ("Disorders of the spine") but found that the evidence did not demonstrate Mr. Shaw's

5   impairments met or medically equaled any of the three subparts of that section. AR 1253-56. Mr.

6   Shaw asserts this was error, arguing that the ALJ should have found his spinal condition met or

7   medically equaled the criteria of Listing 1.04A and Listing 1.04B. Dkt. 19, pp. 12-18.

8          At step three, an ALJ must evaluate the claimant's impairments to decide whether they

9   meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20

10  C.F.R § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the

11  claimant's impairments medically meet or equal a listed impairment, he or she is deemed

12  disabled. 20 C.F.R § 416.920(d). The burden of proof is on the claimant to establish he or she

13  meets or equals any of the impairments in the Listings. *Tackett*, 180 F.3d at 1098. "A generalized

14  assertion of functional problems," however, "is not enough to establish disability at step three."

15  *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

16

17         A mental or physical impairment "must result from anatomical, physiological, or

18  psychological abnormalities which can be shown by medically acceptable clinical and laboratory

19  diagnostic techniques." 20 C.F.R. § 404.1508 (effective through March 26, 2017). It must be

20  established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.* An

21  impairment meets a listed impairment "only when it manifests the specific findings described in

22  the set of medical criteria for that listed impairment." Social Security Ruling (SSR) 83-19, 1983

23  WL 31248, at *2. The ALJ need not "state why a claimant failed to satisfy every different

24  section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

25

26

REPORT AND RECOMMENDATION - 6

A claimant's impairment "medically equals" a listing "if it is at least equal in severity and duration to the criteria" for the listed impairment. 20 C.F.R. § 404.1526(a); *see also Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."). However, "symptoms alone" will not justify a finding of equivalence. SSR 83-19, 1983 WL 31248 *2. An ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). In making this determination the Commissioner considers all relevant evidence in the case record, including evidence of the impairment and its effects on the claimant. 20 C.F.R. § 404.1526(c).

Listing 1.04 provides, in relevant part:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours[.] . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

REPORT AND RECOMMENDATION - 7

Listing 1.04A thus requires four elements, plus an additional one when the lower back is involved: (1) a disorder of the spine as specified; (2) evidence of nerve root compromise; (3) limitation of motion of the spine; (4) motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss; and, in cases of lower back involvement, (5) a positive straight-leg raising test. *Id.* Each of these elements must be present simultaneously. Social Security Acquiescence Ruling 15-1(4), 80 Fed. Reg. 57418, 57420 (Sept. 23, 2015) ("Listing 1.04A uses the conjunction 'and' when enumerating the medical criteria in order to establish that the entire set of criteria must be present at the same time on examination.").

Here, substantial evidence supports the ALJ's determinations that Mr. Shaw's conditions did not meet or medically equal Listing 1.04A or 1.04B.

Listing 1.04A

The ALJ considered the testimony of Darius Ghazi, M.D., at the 2011 hearing and Dr. Brovender at the 2015 hearing, along with two declarations that Mr. Shaw submitted on remand, from Donald Miller, Jr., M.D., and Shirley Fouch, M.D. The ALJ also reviewed the extensive medical treatment records. AR 1253-55. The ALJ concluded that Mr. Shaw's conditions from 2005 to 2010 did not meet or medically equal Listing 1.04A.

Substantial evidence supports the ALJ's determination that Mr. Shaw's conditions did not *meet* each of the Listing 1.04A criteria. In particular, the record supports the ALJ's finding that Mr. Shaw did not suffer from nerve root compromise. Dr. Ghazi testified to his conclusion that Mr. Shaw's condition met the requirements of Listing 1.04A. AR 1141, 1156. As the ALJ found, however, Dr. Ghazi did not testify that Mr. Shaw met the individual criteria for Listing 1.04A. When asked, "in terms of the actual findings in 1.04, where do you get those in the medical records?", Dr. Ghazi stated only that Mr. Shaw had an unsuccessful surgery, continues to have

REPORT AND RECOMMENDATION - 8

pain, "and persisted having radiculopathy and signs or symptoms of nerve root involvement, and things of that nature." AR 1142.

Thus, Dr. Ghazi did not testify that Mr. Shaw had "nerve root compromise," only that Mr. Shaw experienced "nerve root involvement" and "encroachment" of a nerve root. AR 1142, 1154. On the other hand, Dr. Fouch did opine in her declaration that Mr. Shaw's records show he has nerve root impingement and compromise of a nerve root. AR 1719.

Nonetheless, contrary to Dr. Fouch's opinion, the ALJ found it "questionable" that Mr. Shaw had nerve root compression. AR 1254. The ALJ instead relied on Dr. Brovender's testimony at the 2015 hearing. Dr. Brovender testified that contact, irritation, or encroachment of a nerve root—the condition Dr. Ghazi testified to—is not the same as compression or impingement of the nerve root. AR 1759.

The ALJ also relied on her review of the medical records to decide that Mr. Shaw's condition did not include nerve root compromise. She found that "[a]t most, the claimant's lumbar MRIs have demonstrated contact or encroachment of the L5 nerve root." AR 1254; *see* AR 900, 937, 972-73. And she cited findings by treating doctors Chapman and John Loeser, M.D., that indicated a lack of root compression in the lumbar spine. AR 1254; *see* AR 358, 392.

The ALJ also found that Mr. Shaw lacked "the necessary clinical neurological findings" under Listing 1.04A. AR 1254. The ALJ found based on Dr. Brovender's testimony and her review of the medical record that Mr. Shaw "did not have persistent evidence of sensory deficits . . . or abnormal straight leg raising." AR 1254; *see* AR 263, 373-74, 411, 532, 555, 758, 900, 1611 (lack of sensory deficits); *see also* AR 233, 488, 758, 900, 1611 (negative straight leg raising). In addition, Dr. Miller acknowledged that Mr. Shaw's condition did not meet Listing

REPORT AND RECOMMENDATION - 9

1.04A because Mr. Shaw's "medical records do not show motor loss including atrophy with

associated muscle weakness" or a "typically . . . positive straight leg raising test." AR 1702.

In contrast, Dr. Fouch opined that Mr. Shaw's records show "he has pain, limited range

of motion of the lumbar spine, muscle weakness, and sensory loss," along with "radiculopathy

and meralgia paresthetica into the bilateral lower extremities." AR 1719. But Dr. Fouch

acknowledged that she did not perform tests for straight leg raising, range of motion, or sensory

responses. AR 1721.

The ALJ offered specific and legitimate reasons not to credit Dr. Fouch's opinion: that

the medical record contradicts that opinion in that it shows that Mr. Shaw did not meet all the

criteria for the listing; and that Dr. Fouch admitted that she did not perform testing for straight

leg raising, range of motion, or sensory responses. AR 1254, 1721. An ALJ may discount a

medical opinion that conflicts with "other recorded observations and opinions." *Bayliss v.

Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Because the ALJ concluded that the record lacked evidence of nerve root compromise or

neurologic findings, she found Listing 1.04A was not met. The evidence described above amply

supports this finding.

Substantial evidence also supports the ALJ's determination that Mr. Shaw's conditions

did not *medically equal* Listing 1.04A. The ALJ cited as support Mr. Shaw's activities and the

limited credibility of his pain complaints. This Court previously upheld the ALJ's finding that

Mr. Shaw's activities made his subjective complaints less credible. AR 1269-70.

Mr. Shaw contends that the ALJ erred in rejecting Dr. Miller's testimony that his

condition medically equaled Listing 1.04A. But the ALJ gave specific and legitimate reasons for

rejecting Dr. Miller's contradicted opinion. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir.

REPORT AND RECOMMENDATION - 10

2017) (specific and legitimate reasons required to reject reviewing physician's contradicted opinion). She noted that Dr. Miller did not have a chance to review an investigative report and surveillance video that showed Mr. Shaw performing a range of tasks inconsistent with his statements. AR 1254-55; *see* AR 650, 676 (Cooperative Disability Investigations Unit report). She also noted parenthetically that Mr. Shaw's attorney had hired Dr. Miller. AR 1254.

Although "an ALJ may not reject a physician's opinion based on "the mere fact that a medical report is provided at the request of counsel," the Ninth Circuit has held that "[e]vidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could . . . form a legitimate basis for evaluating the reliability of the report." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). The ALJ here did not rely on the "mere fact" that Mr. Shaw's counsel requested Dr. Miller's opinion. Rather, the ALJ evaluated Dr. Miller's opinion in light of Dr. Brovender's conflicting opinion and the evidence in the record showing Mr. Shaw's actual capabilities, which Dr. Miller did not address. AR 1254-55. This is "a legitimate basis for evaluating" Dr. Miller's opinion that Mr. Shaw's condition medically equaled Listing 1.04A.

Listing 1.04B

The ALJ also found that Mr. Shaw's condition did not satisfy any of the criteria for Listing 1.04B, for two reasons: first, the evidence does not show that Mr. Shaw had spinal arachnoiditis, and second, the evidence does not show that Mr. Shaw suffered severe burning or painful dysesthesia resulting in the need to change posture more than once every two hours. AR 1255-56. Substantial evidence again supports these findings.

In support of the first reason, the ALJ found that the record did not support Dr. Miller and Dr. Fouch's conclusions that Mr. Shaw has spinal arachnoiditis, a requirement for Listing 1.04B.

AR 1255. A lack of support from the medical record can provide a specific and legitimate reason for an ALJ to reject a treating doctor's contradicted opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The record supports the ALJ's finding of inconsistency here. Only one doctor in the treatment record suggested that Mr. Shaw has spinal arachnoiditis, and that doctor did not diagnose arachnoiditis but merely suggested it as a possibility. AR 828, 836. Other doctors affirmatively rejected such a diagnosis after reviewing Mr. Shaw's exam results. AR 818, 821-22, 1631.

After thoroughly reviewing the evidence, and based on the imaging studies "and the consensus of the claimant's treating providers," the ALJ found that the preponderance of the evidence did not show spinal arachnoiditis. AR 1255-56. Mr. Shaw has not shown that this finding is unsupported. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions).

The record also supports the ALJ's second finding, that the record does not show evidence of severe burning or painful dysesthesia resulting in a need to change position more often than every two hours. Dr. Miller noted that in 2009 Mr. Shaw reported to Dr. Kraft that he experienced burning pain for three years. He also noted the strong pain medications Mr. Shaw was prescribed. AR 1702. However, in her 2011 decision, the ALJ found that Mr. Shaw's pain complaints were not fully credible based on his activities, and this Court affirmed that determination. AR 1269-70.

<u>Law of the Case</u>

REPORT AND RECOMMENDATION - 12

1    Finally, Mr. Shaw contends that the ALJ erred in considering evidence of his physical

2    activity level in making the step-three determination.

3    But the law of the case doctrine did not prohibit the ALJ from considering Mr. Shaw's

4    activities in evaluating the medical opinions of Drs. Ghazi, Miller, and Fouch. Dkt. 19, pp. 15-

5    16; *see* AR 1254-55. In remanding Mr. Shaw's case, this Court accepted the Commissioner's

6    concession "that the ALJ erred in relying upon Dr. Ghazi's testimony that his activities militated

7    against a finding that [Mr. Shaw] *met* Listing 1.04, because that listing does not include daily

8    activities as one of its elements." AR 1267 (emphasis added). This Court did not previously

9    decide that the ALJ cannot evaluate Mr. Shaw's activities in order to determine if he had

10   impairments that are *medically equivalent* to Listing 1.04. The law of the case doctrine applies in

11   social security cases, "generally prohibit[ing] a court from considering an issue that has already

12   been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d

13   563, 567 (9th Cir. 2016). In Mr. Shaw's situation, the issue that was already decided (listing does

14   not contain activities as an element) is distinct from the issue currently before the court (whether

15   Mr. Shaw's condition is the medical equivalent of the listing).

16   Further, the ALJ was not otherwise prohibited from considering those activities in

17   determining whether Mr. Shaw's condition medically equaled a listing. As noted above, the

18   Social Security regulations required the ALJ to consider "all evidence" in Mr. Shaw's case

19   record "about [Mr. Shaw's] impairment(s) *and its effects on [him]* that is relevant to" the medical

20   equivalence finding. 20 C.F.R. § 404.1526(c). The activities Mr. Shaw could engage in are

21   certainly relevant to whether his impairments are "equal in severity and duration" to the listed

22   impairments.

REPORT AND RECOMMENDATION - 13

Because the ALJ did not commit legal error and substantial evidence supports her findings, the Court should affirm the ALJ's determination at step three.

## IV.  THE ALJ'S FINDING AT STEP FOUR

In addition to the ALJ's findings at step three, Mr. Shaw challenges the ALJ's step-four finding that Mr. Shaw could perform his past work as an art framer. Mr. Shaw contends that the ALJ's analysis contains legal errors and her finding lacks substantial evidence to support it.

At step four, the claimant bears the burden of proving that she could not perform her past, relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); SSR 82–61; C.F.R. § 404.1520(e). "Vocational experts can testify whether particular applicants for disability benefits would be able to perform subcategories of jobs within the [Dictionary of Occupational Titles (DOT)]." *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995).

The DOT is presumptively authoritative regarding job classifications, although that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *see Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("The best source for how a job is generally performed is usually the Dictionary of Occupational Titles."); SSR 00–4p ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."). The presumption can be rebutted with expert testimony that contradicts the DOT, "but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435.

Here, Mr. Shaw first seeks to clarify the ALJ's finding, as part of her assessment of Mr. Shaw's residual functional capacity, on how long Mr. Shaw can stand or walk in an eight-hour workday. He asserts that the ALJ implicitly found that he can stand or walk for five to six hours

REPORT AND RECOMMENDATION - 14

in an eight-hour workday by giving great weight to the opinion of Dr. Brovender. Alternatively, Mr. Shaw points out that the ALJ limited him to "light work," which Social Security rulings define as requiring "approximately six hours" of standing or walking per day. AR 1257; *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, at *6 (S.S.A. 1983).

Mr. Shaw is correct on both counts. Moreover, the Commissioner concedes that the ALJ implicitly found that Mr. Shaw can stand or walk for five to six hours in an eight-hour workday. Dkt. 28, p. 3.

Mr. Shaw then asserts that the ALJ erred in relying on the Dictionary of Occupational Titles (DOT) entry for art framer ("picture framer") to define Mr. Shaw's past work as needing only five to six hours of standing or walking as it is generally performed. Mr. Shaw contends that a declaration by Dr. Joseph Moisan proves that the job as generally performed requires a person to stand or walk constantly, for eight hours per day.

The Court concludes that the ALJ's step-four analysis was legally sufficient and supported by substantial evidence.

The ALJ properly relied on the DOT and vocational expert Michael Swanson to define "picture framer" as light work. AR 1235, 1260; *see* DOT § 739.684-146. Mr. Swanson testified that the job of "picture framer" requires work at a light exertional level as the DOT defines it. AR 1235. Mr. Swanson testified that a person limited to the full range of light work could perform that job. AR 1234. Relying on this testimony and her RFC assessment, the ALJ found that Mr. Shaw could perform that job. AR 1261.

Mr. Shaw points out that Mr. Swanson did not mention standing and walking and did not testify that art framers generally stand or walk for five to six hours per day. See AR 1232-39. But

REPORT AND RECOMMENDATION - 15

Social Security rulings define "light work" as requiring "approximately 6 hours of standing." SSR 83-10. Social Security rulings—though not binding law—provide guidance on the regulations, and an ALJ may properly rely on them. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). This Court can reasonably infer from the ALJ's decision that she found that work as a "picture framer" requires no more than five to six hours of standing and walking per workday. *See* AR 1234-35; *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (court may draw "specific and legitimate inferences from the ALJ's opinion").

Dr. Moisan's declaration does not successfully rebut the inference that work as a "picture framer" requires no more than six hours of standing or walking. *See* AR 1234; SSR 83-10; DOT § 739.684-146. The DOT "can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy." SSR 82-61; *see Pinto*, 249 F.3d at 845. Mr. Shaw asserts, to the contrary and without citing authority, that the requirements of a specific job as generally performed is a fact-specific inquiry that cannot be resolved by looking to either Social Security rulings or the DOT. He contends that Dr. Moisan's declaration shows that art framing as it is generally performed really takes eight hours per day of standing or walking. Dkt. 19, pp. 11-12.

Mr. Shaw submitted Dr. Moisan's declaration to the Appeals Council. AR 1320, 1332. The Appeals Council considered the declaration in declining to assume jurisdiction. AR 1241. The ALJ thus did not have a chance to consider the declaration in the first instance. Although the ALJ is normally the finder of fact in Social Security cases, the Ninth Circuit has held that when new evidence is first submitted to the Appeals Council, this Court is to consider it as part of the administrative record and evaluate that record as a whole, rather than remanding for the ALJ to

REPORT AND RECOMMENDATION - 16

consider the new evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Reviewing Dr. Moisan's declaration in addition to the other evidence in the record, the Court concludes that substantial evidence supports the ALJ's decision at step four. Dr. Moisan reported the results of phone calls to three stores in Western Washington. AR 1332. He apparently spoke to one employee at each store. *Id.* One store's employee reported that she "is constantly on her feet for 40 hours a week." *Id.* The other two stores reported that a picture framer is on his or her feet "constantly." *Id.* Dr. Moisan concluded that the job of picture framer varies from the physical demands included in the DOT. *Id.*

The Court disagrees with Mr. Shaw's assertion that Dr. Moisan's declaration compels a finding that the ALJ erred. Dr. Moisan did not observe anyone at work in that job. He spoke by phone to only three employees. His reports of their statements are brief, conclusory, and phrased almost identically in the terminology of a residual functional capacity assessment. AR 1332 ("The framer is constantly on their feet, both walking or standing eight hours a day, and constantly reaching, handling, and fingering."). Moreover, Dr. Moisan did not address the sample size of his survey, or whether his method of selecting the sample was reliable, and there is no information about whether these were the only results of his survey, or whether he also spoke to employees at other stores. *Id.*

In *Johnson v. Shalala*, the Ninth Circuit held that the DOT's presumptive authority was rebutted by "persuasive testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." 60 F.3d 1428, 1435 (9th Cir. 1995). Unlike the claimant in *Johnson*, Mr. Shaw is not challenging a decision by the ALJ to deviate from the DOT

REPORT AND RECOMMENDATION - 17

but, rather, appears to contend that this Court must overturn the ALJ's decision because the new evidence would have *required* the ALJ to deviate from the DOT.

Mr. Shaw cites no authority that would compel the ALJ or this Court to find based on Dr. Moisan's declaration that the job of art framer as generally performed requires a person to stand for the entire day. Mr. Shaw also misses the mark in asserting that Dr. Moisan's declaration is "the only evidence in this case expressly addressing how much standing and/or walking a DOT picture framer does." Dkt. 19, p. 12. Rather, Mr. Swanson's testimony that picture framing is "light work" is evidence that that job requires no more than five to six hours of standing or walking in a typical day. *See* SSR 83-10. Mr. Swanson did not need to state this expressly. *See Pinto*, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations [ ].") (citation omitted); *see also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (ALJ may draw inferences "logically flowing from the evidence").

Because Mr. Shaw can perform light work and the job of "picture framer" is light work as it is generally performed, the ALJ did not err in finding that Mr. Shaw could perform the job of "picture framer."

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ properly determined Mr. Shaw to be not disabled, and therefore that it affirm the ALJ's decision to deny benefits.

REPORT AND RECOMMENDATION - 18

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **April 13, 2018**, as noted in the caption.

DATED this 21st day of March, 2018.


Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19